Entered on Docket
May 06, 2014
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: May 6, 2014



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF CALIFORNIA

In re                                   ) Bankruptcy Case
                                        ) No. 13-30195DM
LABORATORY SKIN CARE, INC.,             )
                                        )
                     Debtor.            ) Chapter 11
_____)

**MEMORANDUM DECISION ON FEE APPLICATIONS OF TRUSTEE
AND HIS PROFESSIONALS**

On December 13, 2013, this court held a hearing on (1) the First and Final Application for Compensation and Reimbursement of Expenses by James S. Lowe II, the chapter 11 trustee ("Trustee"); (2) the First and Final Application for Fees and Expenses of Gabrielson & Company ("Gabrielson"), accountant for Trustee; and (3) the First and Final Application for Compensation for Services and Reimbursement of Expenses of Joseph & Cohen, P.C. ("J&C"), counsel for the Trustee (collectively, the "Applicants"). The United States Trustee ("UST") opposed the Trustee's application, contending that he had improperly calculated his maximum compensation on funds disbursed to debtor Laboratory Skin Care,

Inc. ("Debtor").[1]  Like the UST, Debtor opposed the Trustee's application because his fees purportedly exceeded the cap of 11 U.S.C. § 326.  Debtor additionally opposed the fee applications of Gabrielson and J&C, arguing that the services rendered were not necessary to the administration of the estate or were not beneficial to estate.

At the hearing, the court approved a portion of the fees and costs requested by the Applicants[2] and permitted the Applicants, the UST and Debtor to submit supplemental briefing regarding Applicants' entitlement to the balance of their requested fees.  The parties stipulated to several extensions of time for filing the supplemental briefing, and the matter was submitted on March 10, 2014, upon submission of the final briefing by the Applicants.  For the reasons set forth below, the court will permit the Trustee to recover $44,262.67 as his total compensation and will allow in part the balance of the fees requested by J&C and Gabrielson.[3]

---

[1] The UST also opposed any request for fees above the statutory cap for services rendered by Trustee's paraprofessional who was not employed as an estate professional under section 327(a).  See Boldt v. U.S Trustee (In re Jenkins), 130 F.3d 1335, 1341 (9th Cir. 1997).  The court sustains this objection, and will not allow any such fees beyond the cap.

[2] The court awarded Trustee $23,009.03 in fees and $2,626.05 in expenses (Docket No. 312); awarded J&C $79,518 in fees (Docket No. 313); and awarded Gabrielson $56,565 in fees and $668.87 in expenses (Docket No. 311).

[3] On March 10, 2014, J&C and Gabrielson filed supplemental fee applications (Docket Nos. 367 and 369) requesting additional fees primarily pertaining to the defense of their fees and the Trustee's requested compensation.  The court is not addressing these supplemental applications in this memorandum decision as Debtor, UST and creditors have not been provided an opportunity to respond.  If J&C and Gabrielson desire court consideration of their supplemental requests, they should provide Debtor and the UST with an opportunity to be heard.  An actual hearing is not

A.  <u>Trustee's Fees</u>

Trustee contends that when calculating his maximum statutory fee, the court should permit him to recover a percentage of the funds over which the reorganized Debtor seized possession and control upon confirmation. In particular, Trustee persuasively asserts that Debtor, Debtor's counsel (Richard A. Lapping, Esq.), and Debtor's CEO and plan proponent (Ms. Zahra Mansouri) agreed that Trustee would pay the administrative expenses that were incurred or allowed during his tenure (i.e., those of Dumas & Clark, Arch & Beam, Gabrielson, the UST, etc.) from the Trustee's account at Bank of America or from a new, special reserve account maintained by the Trustee solely for that purpose. While the confirmed plan provided that the reorganized Debtor "shall" pay professional fee claims and trustee compensation, the parties' course of dealing throughout the plan proposal and confirmation process reflects that Trustee would make those disbursements before relinquishing full control of the account to Debtor.[4]

---

necessary at this juncture; scream-or-die notice under B.L.R. 9014-1(b) will suffice.

[4] Both Mr. Lapping and Ms. Mansouri deny that they entered into any agreement that would be contrary to sections 3.1.1 and 3.4 of the confirmed plan. That may be so. The court notes, however, that the "LSC - Funds Administration" e-mail circulated by Trustee's counsel following the confirmation hearing reflects that a supplemental order or other submission would reflect the procedures. Thus, the parties contemplated making conforming modifications to the plan (whether by order or otherwise). *See* Exhibit B to the Declaration of David A. Honig, Esq., filed on December 12, 2013, at Docket 306-2. The court routinely signs orders modifying a plan provision as stipulated by parties, particularly when, as here, the amendment would not affect payments to other creditors. Such an amendment would be solely administrative in nature. No creditor's payment would have been decreased or affected by having the trustee pay the administrative claims.

-3-

The UST and the Debtor correctly observe that the language of section 326(a) explicitly excludes funds disbursed or turned over to a debtor from the calculation of a trustee's maximum statutory compensation:

> In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, *upon all moneys disbursed or turned over in the case by the trustee to parties in interest, <u>excluding the debtor,</u> but including holders of secured claims*.

11 U.S.C. § 326(a) (emphasis added). Here, however, certain funds upon which the Trustee calculates his maximum compensation were not voluntarily disbursed or turned over by him to the Debtor. Rather, Ms. Mansouri unilaterally usurped control over funds in the Trustee's account in derogation of an understanding between the parties about the disbursements of funds and in defiance of instructions by her counsel. Trustee and his counsel have presented compelling evidence that in the course of proposing and seeking confirmation of Debtor's plan of reorganization, Ms. Mansouri and Debtor had acted consistently with the thought that the Trustee's cap would be based on disbursements allocable to the Trustee's tenure. To that end, counsel for the Trustee memorialized the understanding for the post-confirmation bank account management and administrative payment protocol in an email dated November 1, 2013. *See* Exhibit B to the Declaration of David A. Honig, Esq., dated December 12, 2013, at Docket No. 306-2.

Following the confirmation hearing, Ms. Mansouri proposed

-4-

going to the bank to take control of the disbursements.  Mr.
Lapping directed his client to do nothing further until after Mr.
Honig's e-mail arrived and the group could settle on the details.
*See* Declaration of David A. Honig, Esq., dated March 10, 2014, at
Docket No. 374.  Despite this direction and in disregard of the
agreed protocol for disbursements, Ms. Mansouri delivered the plan
confirmation order to Bank of America and directed the bank to
give her immediate control of the account.  The bank froze the
account briefly but ultimately turned control of the account and
funds to her.  Consequently, the Trustee could not implement the
planned procedure for payment of the administrative expenses.

    Given this sequence of events, the court does not believe
that the funds were "disbursed by" the trustee as much as they
were "seized by" Ms. Mansouri and the Debtor.  Therefore, the
language of section 326(a) prohibiting the trustee from
calculating his maximum fee based on disbursements made or monies
turned over to the debtor does not apply in these particular
circumstances.  Effectively, Ms. Mansouri became the Trustee's
agent (albeit without his consent), so Debtor's disbursements to
administrative claimants whose claims were incurred during the
Trustee's tenure were those of the Trustee.  To ignore these
facts and apply the statute literally as Debtor and the UST urge
would be patently unfair to the Trustee and reward unacceptable
behavior by the Debtor's CEO.  The court will therefore allow the
Trustee to calculate his maximum fee based on distributions made
on administrative claims allocable to his tenure.  Consequently,
Trustee's cap calculation should be $44,262.67, and Debtor should
remit $21,262.67 ($44,262.67 minus the $23,000 already

-5-

distributed) to Trustee.

B.  <u>Fees and Expenses of Trustee's Professionals</u>

Debtor contends that Trustee and his professionals were not "responsible for [Debtor's] successful confirmation of a plan" and did not make "any material contribution to the continued operation of [Debtor's] existing business during the plan confirmation process." Debtor's Supplemental Opposition (Docket 332) at 2:11-16. It thus objects to their fees because their services "were not reasonably likely to benefit the debtor's estate" and were not "necessary for the administration of the case." 11 U.S.C. § 330(a). In particular, Debtor objects to consultations by J&C and Gabrielson with a third party about a possible alternative plan. The court believes that exploring plan alternatives (and perhaps rejecting them) was necessary at the time. The most vocal and active creditor, Bothwell Figg, had not agreed to Debtor's plan and serious issues existed as to the feasibility of Debtor's plan. By being receptive to alternative plan arrangements, Trustee applied further incentive to Debtor and Ms. Mansouri to reach a consensus with all creditors, including Bothwell Figg. Moreover, Trustee would have been remiss in performing his duties to the estate had he not explored the possibility of an alternative plan offered by a third party. The court therefore rejects Debtor's contention that the services provided by Trustee's professionals in this activity were not reasonably necessary at the time they were performed.

That said, the court agrees with Debtor that some of the services provided by J&C were not necessarily within the scope of its professional employment but were more properly within the

-6-

scope of the Trustee's duties. In particular, some of the tasks performed by counsel and identified in Debtor's opposition appear non-legal in nature and fall within the scope of duties to be performed by the trustee. *In re Garcia*, 335 B.R. 717, 725 (9th Cir. BAP 2005) ("Section 328(b) provides that an attorney or accountant may not receive compensation for the performance of any trustee's duties that are generally performed by a trustee without the assistance of an attorney or accountant."). For that reason, the court will disallow $2,000 of J&C's fees. The balance of J&C's requested fees and expenses described in its First and Final Application (but not in the supplement, as discussed in footnote 2, *supra*) are allowed.

The court's concern about the fees of Gabrielson are directed at the vague nature of several of its time entries. It repeatedly billed time for "review[ing] and respond[ing] to financial and accounting communication involving [X number] e-mails." Without more information, the court cannot determine whether the review of such e-mails provided a benefit to the estate. The fees for these imprecise time entries exceed $6,600.00. By the court's calculation, Gabrielson charges $10 for each e-mail. Without knowing whether these emails are simply those on which Gabrielson is copied as a courtesy, or whether they involved matters requiring Gabrielson's professional expertise, the court cannot conclude that the services were necessary and beneficial. Accordingly, the court will reduce Gabrielson's fees by $3,000, and overrules the balance of Debtor's objections to Gabrielson's fees. While Mr. Gabrielson could have appeared at hearings by telephone (thus reducing his travel time), Trustee may have

-7-

required his assistance with respect to feasibility or other financial matters raised at a particular hearing.  The court cautions professionals about unnecessary attendance at court hearings, but Mr. Gabrielson's attendance was not duplicative of another professional.  In future matters in this court, Mr. Gabrielson may want to consider appearing telephonically, but the court will not reduce his compensation for being available to advise Trustee at hearings in this hotly contested case.

C.  <u>Conclusion</u>

Counsel for the Trustee should prepare orders awarding fees and expenses in accordance with this memorandum decision.  He should obtain the consent of the UST's and Debtor's counsel as to the form of the orders.  If no such consent is obtained, he should serve the proposed form of order on the UST's and Debtor's counsel, upload the proposed form of order, and send an e-mail (copied to Applicants) to Montali_Orders@canb.uscourts.gov stating the nature of the dispute, if any, as to the proposed order.

\*\*\* END OF MEMORANDUM DECISION \*\*\*